# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:19-CV-00246-GCM

|  |  |
|---|---|
| MONTEGA L. EVERETT, | |
| **Plaintiff,** | |
| v. | **ORDER** |
| NANCY A. BERRYHILL, | |
| **Defendant.** | |

**THIS MATTER** comes before the Court upon the parties' cross-motions for summary judgment pursuant to Plaintiff Montega L. Everett's Complaint Requesting Review of an Administrative Decision Under the Social Security Act ("the Act"). Plaintiff filed her Motion for Summary Judgment [ECF Doc. 11] on September 24, 2019, and Defendant filed her Motion for Summary Judgment [ECF Doc. 15] on December 26, 2019. Plaintiff filed a Response [ECF Doc. 17] on January 9, 2020. Additionally, Defendant filed a Notice of Supplemental Authority [ECF Doc. 18] on February 27, 2020 and Plaintiff filed her Response to Defendant's Notice of Supplemental Authority [ECF Doc. 19] on March 2, 2020. Briefing on these matters being now complete, the motions are ripe for review, and the Court enters the following facts and conclusions of law.

## I.    BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income due to alleged disabilities from arthritis, metal plates and pins in her right leg, high blood pressure, vision problems, headache, right shoulder injury with pain, and pain in her leg and ankles. The Administrative Law Judge ("ALJ") decided on September 19, 2014 that Plaintiff was not

disabled within the meaning of the Act from May 24, 2013 through the date of the ALJ's decision. When Plaintiff sought review of the decision in the District Court, the District Court granted a consent motion to remand for further administrative proceedings in May 2016. On March 19, 2018, after another ALJ hearing, the ALJ decided again that Plaintiff was not disabled within the meaning of the Act from May 24, 2013 through the date of the ALJ's decision. Plaintiff then filed this Complaint. Any additional facts relevant to this Court's review of the decision are set forth in the discussion section below.

## II. STANDARD OF REVIEW

Judicial review of a final social security decision from the Commissioner is authorized under 42 U.S.C. § 405(g) but is limited to two considerations: (1) whether the Commissioner applied the correct legal standards and (2) whether substantial evidence supports the Commissioner's decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craig v. Charter*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is more than a scintilla but less than a preponderance of the evidence. *Id.* District courts must uphold the Commissioner's decision so long as the decision is supported by substantial evidence, even if the district court could have come to a different conclusion. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff raises three assignments of error with regard to the ALJ's decision. First, Plaintiff argues the ALJ relied on the testimony of the vocational witness, which conflicted with the *Dictionary of Occupational Titles* ("DOT") without obtaining an explanation regarding the apparent conflict. Second, Plaintiff claims the residual functional capacity ("RFC") assessment

limited Plaintiff's ability to stay on task in two-hour intervals without explaining the conclusion and limited Plaintiff to "no production work" without defining the term. Third, Plaintiff contends the ALJ rejected Plaintiff's testimony regarding her pain and limitations without evaluating the testimony using the applicable regulatory factors. The Court will consider each assignment of error raised by Plaintiff below.

### a. ALJ's Finding Regarding Vocational Witness Testimony

Plaintiff argues the ALJ relied on the testimony of the vocational expert in error because he did so without considering an allegedly apparent conflict with the DOT. The fifth step to a social security claim requires the ALJ to determine whether there is work in significant numbers in the national economy that the plaintiff can perform despite impairments. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c) (2018). In this step, the ALJ must "identify and resolve any apparent conflicts between the DOT and a vocational expert's testimony" as to whether there is work that the plaintiff can perform. *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019). To do so, the ALJ asks the vocational expert whether the vocational expert's testimony conflicts with the DOT. *Id.* If the vocational expert says the testimony does not conflict with the DOT, the ALJ must still "independently identify and resolve any apparent conflicts before relying on the expert's testimony." *Id.*

In our case, the ALJ found the following RFC for Plaintiff:

[C]laimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is to have a sit/stand option at 30-minute intervals. She can never climb ladders; however, she can frequently climb stairs, balance, stoop, crouch, kneel, or crawl. She is to have no concentrated exposure to hazards such as moving machinery or unprotected heights. She is capable of simple routine repetitive tasks for two-hour intervals throughout the day for the duration of the workday. She is not to do any assembly line work and no production work. Finally, she is limited to no more than occasional public contact.

ECF Doc. 10-9 at 18.  Given this RFC, the ALJ considered the vocational expert's testimony that Plaintiff could perform work as an electronic worker and an inspector and hand packager.  *Id.* at 28.[1]  The vocational expert testified that there was no conflict, and the ALJ found the same.  *Id.* at 28, 198.

Plaintiff maintains the jobs the vocational expert listed require level two General Educational Development ("GED") reasoning in the DOT, which apparently conflicts with Plaintiff's limitation to simple, routine, repetitive tasks ("SRRTs").  However, the Fourth Circuit has recently found that, where an RFC assesses the claimant can perform "simple, routine[,] repetitive tasks of unskilled work," there is no inconsistency between the RFC and jobs that require level two GED reasoning.  *Lawrence*, 941 F.3d at 143; *see also King v. Saul*, 787 F. App'x 170, 171 (4th Cir. 2019) (following *Lawrence* as controlling precedent where there was a limitation to SRRTs and the vocational expert testified that the plaintiff could perform occupations requiring level two GED reasoning).  While Plaintiff seeks to distinguish her RFC from the plaintiff's RFC in *Lawrence*, they are virtually identical in that both claimants were limited to SRRTs, each vocational expert offered jobs that required level two GED reasoning, and neither ALJ found an apparent conflict.  Just as in *Lawrence*, this Court concludes there is no apparent conflict, the ALJ did not err in failing to address an apparent conflict, and remand under this matter is not warranted.

### b.  ALJ's Finding Regarding RFC

Plaintiff also alleges the ALJ failed to sufficiently explain his reasoning with regard to two portions of the RFC assessment.  First, according to Plaintiff, the ALJ did not sufficiently explain

---

[1] As the parties both note, the vocational expert substituted a laundry worker for the job of inspector and hand packager, given the assembly line and non-production work limitation in the ALJ's hypothetical.  ECF Doc. 12 at 13; ECF Doc. 16 at 6 n.2; ECF Doc. 10-9 at 195–96.  Plaintiff's assignment of error regards the General Educational Development reasoning requirement of the jobs about which the vocational expert testified.  A laundry worker, electronic worker, and an inspector and hand packager each require level two General Educational Development reasoning, so this discrepancy between the transcript and the ALJ's decision is irrelevant to the Court's consideration of whether an apparent conflict existed between the vocational expert's testimony and the DOT.

the reasoning underlying his RFC assessment regarding Plaintiff's ability to perform tasks for two-hour intervals throughout the workday. An ALJ's RFC assessment should include a narrative discussing how the evidence supports the ALJ's conclusions and should contain a logical bridge from the evidence to the conclusion. *Beasley v. Berryhill*, No. 1:17-cv-00294-RJC, 2019 WL 1330928, at *5 (W.D.N.C. Mar. 25, 2019) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)). However, there is no per se rule requiring remand if the function-by-function analysis is not explicit. *Id.* In *Beasley*, the court rejected the idea that a conclusory statement regarding the plaintiff's ability to perform SRRTs for two-hour segments required remand. *Id.* What is important is that, if an ALJ finds moderate concentration, persistence, and pace ("CPP") difficulties, the ALJ should adopt a restriction addressing the issue of staying on task related to the CPP deficit or explain why no further restriction is necessary to address such issue. *Id.* The court in *Beasley*, consistent with other decisions, found that limiting the plaintiff to two-hour work intervals addressed the plaintiff's moderate CPP deficiency. *Id.* Similarly, here the ALJ found moderate CPP limitations and addressed those with a two-hour work interval limitation.

Absent Plaintiff pointing to conflicting evidence suggesting she is more limited than the ALJ concluded, the Court sees no reason to find that substantial evidence does not support the ALJ's two-hour limitation. *See id; Hendrickson v. Berryhill*, No. 116-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) (noting it is a plaintiff's burden to prove the extent of the plaintiff's functional limitations); *see also Allen v. Berryhill*, No. 3:16-CV-00851-RJC, 2018 WL 1175231, at *5 (W.D.N.C. Mar. 6, 2018) (concluding the RFC assessment directly addressed the claimant's limitations, and no further explanation was required where the claimant presented no evidence supporting a greater limitation). Evidence supporting the ALJ's two-hour interval limitation includes giving significant weight to a May 1, 2014 assessment where the social worker

conducting the assessment found concentration and distraction were moderate, Plaintiff had a cooperative attitude, appropriate affect, normal thought process rate, appropriate thought content, circumstantial thought associations, normal speech, short attention span, normal perception, concrete thinking, normal judgment, and partial insight. ECF Doc. 10-9 at 23–24, 26. While Plaintiff cites symptoms reported in a June 2016 psychological evaluation, Plaintiff did not complain of difficulty staying on task. *See id.* at 17, 24. Moreover, little weight was given to a December 2013 assessment where a state-agency psychological consultant found only mild CPP deficiencies. *Id.* at 25. Further, for historical purposes, the ALJ considered assessments from 2007 and noted that a state-agency psychological consultant found only moderate CPP difficulties. *Id.* Plaintiff argues no "mental health evaluators opined Plaintiff can sustain tasks for up to two-hour intervals," but Plaintiff points to no evidence indicating Plaintiff cannot sustain tasks for up to two-hour intervals. The ALJ cited substantial evidence supporting his conclusion that Plaintiff can sustain tasks for two-hour intervals and, on this matter, the case should not be remanded.

Next, the Court must address whether the ALJ sufficiently laid out his reasoning that Plaintiff should be limited to no assembly line work and no production work where the ALJ gave no definition of what "production work" means. Courts do not agonize over the "various interpretations of non-production limitations," but instead take time to determine whether a non-production limitation adequately addresses the claimant's moderate CPP assessment. *Allen*, 2018 WL 1175231, at *5; *Bryan-Tharpe v. Colvin*, No. 1:15CV00272, 2016 WL 4079532, at *2–3 (M.D.N.C. July 29, 2016) (citing a voluminous list of cases illustrating how courts are not analyzing or questioning the meaning of "non-production" but, rather, discussing whether a non-production limitation addresses moderate CPP deficiencies). Although terms such as "non-production jobs" or "production jobs" are not explicitly defined in regulation, they are used

frequently and, while the ALJ will usually provide some definition or context for what the limitation means, they typically involve "piecework with quotas or assembly line work involving a rapid pace of material handling." *Jolly v. Berryhill*, No. 4:16cv38, 2017 WL 3262186, at \*9–10 (E.D. Va. July 13, 2017) (acknowledging how these terms are typically used while finding that a limitation to "simple, routine, repetitive, non-production job tasks" without "frequent interaction with coworkers and the public" met the claimant's moderate CPP limitation); *see also, e.g.*, *Perry v. Berryhill*, 765 F. App'x 869, 872 n.1 (4th Cir. 2019) (remanding a case where the ALJ did not explain the meaning of "non-production oriented work setting" while citing *Sizemore v. Berryhill* where the ALJ used similar terms but provided additional context to the terms); *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017) (explaining that the claimant was to work "low stress non-production jobs with no public contact"); *Franklin v. Colvin*, No. 5:14-cv-00084-MOC-DLH, 2015 WL 4510238, at \*2 (W.D.N.C. July 24, 2015) (noting the ALJ defined "a low stress work environment" as "one that does not involve production/assembly-line/high-speed work or contact with the public").

Additionally, although it is well-known that ALJs must "show their work" and logically bridge the evidence to their conclusion, where an ALJ includes a specific restriction which facially addresses a moderate CPP limitation, courts have concluded that—absent some type of evidentiary showing by the claimant—no further explanation by the ALJ is needed. *See, e.g.*, *Hammond v. Berryhill*, No. 3:17-cv-00096-FDW, 2018 WL 1472488, \*3, 5 (W.D.N.C. Mar. 26, 2018); *Allen*, 2018 WL 1175231, at \*5. Though sometimes an ALJ's narrative is "not a model of clarity," an imperfect narrative does not always merit remand. *See Pitts v. Colvin*, No. 5:13-CV-153-RLV-DCK, 2014 WL 12599801, at \*7 (W.D.N.C. Sept. 26, 2014).

As noted previously, the ALJ carefully weighed the evidence in this case and explained the weight he gave to various assessments before determining Plaintiff had a moderate CPP deficiency. It is repeatedly acknowledged that a limitation to non-production jobs can address such moderate CPP deficits. The Court finds that the ALJ's discussion, especially where he limits Plaintiff to no assembly-line and no production work in the same sentence, provides enough context to understand the meaning of "no production work" and the rationale behind excluding "production work." Limiting Plaintiff from participating in production work facially addressed Plaintiff's moderate CPP deficits and served as an adequate narrative to support the RFC assessment without needing further explanation. Therefore, remand is not required under this assignment of error.

**c. ALJ's Finding Regarding Witness Testimony Pertaining to Pain and Limitations**

Finally, Plaintiff maintains the ALJ did not provide specific reasons supported by substantial evidence for his credibility finding regarding Plaintiff's statements pertaining to the intensity, persistence, and limiting effects of her symptoms. There are several regulatory factors relevant to a claimant's symptoms that ALJs consider, including:

(i)   Your daily activities;
(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Nevertheless, an ALJ is not required to discuss all these regulatory factors in the decision. *Bramblett v. Colvin*, No. 2:14-CV-00011-RLV, 2016 WL 1249297, at *7 (W.D.N.C. Mar. 30, 2016). Nor must an ALJ specifically refer to every piece of evidence in the decision. *Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (concluding "the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered"). Moreover, an ALJ's credibility determinations are "given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Plaintiff contends that she testified to disabling limitations including limited arm movement, ongoing right thigh and ankle pain, ankle swelling, memory problems, blurry vision, the need to wear an ankle boot when her pain is severe and a failure of medicine to help the pain, ankle pain while walking, ankle pain when standing more than five minutes, the need to elevate her ankle to relieve pain, limited right shoulder motion, frequent headaches and dizzy spells, neck pain, migraines, sleeping trouble, her decision not to drive due to vision issues, and her inability to do household chores. According to Plaintiff, the ALJ did not evaluate her testimony pursuant to the regulatory factors. Plaintiff argues the ALJ did not discuss the increased pain she experiences when standing and walking on her ankle, the need to wear a boot, or the subtalar arthritis that affects her ability to be on her feet. Moreover, Plaintiff maintains the ALJ did not discuss Plaintiff's limited daily activities, including that she performs few daily chores other than occasional cooking and her attempt to work but inability to do so due to increased pain. Further, Plaintiff contends evidence does not support the ALJ's conclusion that Plaintiff can stand and walk the amount necessary to sustain light work with the additional restrictions the ALJ imposed, considering she was unable to work as a caterer's helper, which is classified as light work without

the additional restrictions. In sum, Plaintiff argues the ALJ's failure to evaluate Plaintiff's pain and limitations by applying the regulatory factors undermines his credibility finding.

In contrast, Defendant argues first that the ALJ addressed Plaintiff's alleged vision impairment, finding that there was no medically determinable impairment and, even if there was, it was treatable. Second, Defendant maintains the ALJ discussed the testimony and evidence relating to Plaintiff's allegations of frequent headaches, dizzy spells, neck pain, migraines, and trouble sleeping. Yet, medical evidence indicated Plaintiff's conditions improved with medication. Defendant notes that considering the symptoms and how they are affected by medication addresses two of the regulatory factors Plaintiff alleges were not considered. Third, Defendant contends that, contrary to Plaintiff's argument that the ALJ did not discuss her limited daily activities, the ALJ noted that she attempted to work, the reason she had to stop working, and that being on her feet was an aggravating factor. Further, Defendant points out that the ALJ summarized Plaintiff's daily activities and noted Plaintiff did not report difficulties with her daily living activities during the mental impairment assessment on May 1, 2014. Again, Defendant identifies that considering aggravating factors and daily activities are two more regulatory factors the ALJ addressed. Fourth, as to Plaintiff's alleged pain while working as a caterer helper, Defendants argue Plaintiff points to no medical direction not to take pain medication, she cannot claim disability due to her choice not to take pain medication, and—regardless—the ALJ accommodated these allegations by giving Plaintiff a sit-stand option at thirty-minute intervals. Fifth, Defendant contends Plaintiff seems to be arguing the ALJ did not discuss that standing and walking increase her pain and sometimes she has to use a boot for her ankle. Yet, Defendant maintains the ALJ considered and accommodated these symptoms through the restrictions imposed on her ability to perform light work despite several normal or relatively benign physical

examinations. Sixth, Defendant notes the ALJ actually gave little weight to certain physical assessments because the ALJ found the evidence, including Plaintiff's subjective complaints, limited Plaintiff more than these certain physical assessments indicated.

Given the evidence that the ALJ explicitly considered in his decision, the Court finds that the ALJ did not err in his credibility determination of Plaintiff's subjective testimony. In several instances, Plaintiff's symptoms could be alleviated by medication. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Moreover, even if the ALJ did not explicitly state which factor he was addressing, it is clear the ALJ plainly considered the relevant regulatory factors as he is supposed to do. *See Bramblett*, 2016 WL 1249297, at *7. Further still, in that Plaintiff argues the ALJ did not discuss all the relevant evidence in making his credibility determination, he is not required to refer specifically to every piece of evidence used in his determination. *See Brewer*, 2008 WL 4682185, at *3. The Court finds that substantial evidence supports the ALJ's credibility determination. The ALJ adequately evaluated Plaintiff's pain and limitations, his finding is not deficient, and the Court will not remand pursuant to this assignment of error.

## IV.  ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment [ECF Doc. 11] is **DENIED**; Defendant's Motion for Summary Judgment [ECF Doc. 15] is **GRANTED**; and the Commissioner's decision is **AFFIRMED**;

**IT IS FURTHER ORDERED** that the clerk is directed to send copies of this Order to counsel for the parties.

**SO ORDERED**.

Signed: November 9, 2020

Graham C. Mullen
United States District Judge